TREAT and another, Appellants, vs. HILES, Respondent.

*February 5 — March 1, 1887.*

*Contracts: Partnership: Statute of frauds.*

1. An agreement that A. shall procure the conveyance to B. of lands
   belonging to a third person, upon which A. has discovered a valu-
   able quarry, that B. shall pay for such land, and that thereafter
   they shall open and work the quarry together and share the prof-
   its equally, is either an agreement for a copartnership or an agree-
   ment of copartnership, and for a breach thereof by B., A. may
   maintain an action for damages.
2. Such a contract is not within the statute of frauds (sec. 2302, R. S.),
   as being for any interest in lands, nor (sec. 2307) as being by its
   terms not to be performed within one year.

APPEAL from the Circuit Court for *Milwaukee* County.
This case is sufficiently stated in the opinion. The de-
fendants appealed from an order overruling a general de-
murrer to the complaint.

Treat and another vs. Hiles.

*N. S. Murphey*, for the appellants, argued, among other things, that the contract set out in the complaint was in effect an agreement for copartnership in the operation of the quarry, and if executed would convey no interest in land, but only an interest in the profits of working the quarry. Story on Part. 34, 53–60, 220, 42, 48; *Brigham v. Dana*, 29 Vt. 9; *Smith v. Wright*, 5 Sandf. 113; *Rosenfield v. Haight*, 53 Wis. 260; *Whitney v. Ludington*, 17 id. 140; *Upham v. Hewitt*, 42 id. 85; *Leggett v. Hyde*, 58 N. Y. 272; 1 Pars. on Cont. 166; *Reid v. Hollinshead*, 4 B. & C. 867; *Smith v. Watson*, 2 id. 401; *Heran v. Hall*, 1 B. Mon. 159; *Berthold v. Goldsmith*, 24 How. 536; *Gilbank v. Stephenson*, 31 Wis. 592; *Grant v. Hardy*, 33 id. 668; 3 Parsons on Cont. 39; *Houston v. Laffee*, 46 N. H. 507; *N. O., J. & G. N. R. Co. v. Moye*, 39 Miss. 374; *Coleman v. Eyre*, 45 N. Y. 38; *Brockett v. Evans*, 1 Cush. 79; *Preble v. Baldwin*, 6 id. 549; *Remington v. Palmer*, 62 N. Y. 31; *Thomas v. Dickinson*, 12 id. 364; *Thayer v. Vilas*, 23 Vt. 494; *Nutting v. Dickinson*, 8 Allen, 540. The contract was not such that it could not be performed within a year, and it was therefore not void under sec. 2307, R. S. The quarry might be exhausted or one of the parties might die within the year. 3 Parsons on Cont. 35, 36, and note; *Rogers v. Brightman*, 10 Wis. 63; *McClellan v. Sanford*, 26 id. 609; *Jilson v. Gilbert*, id. 637; *White v. Hanchett*, 21 id. 415; *Murray v. Abbot*, 61 id. 198; *Heath v. Heath*, 31 id. 223. The contract has been entirely executed so far as the appellants are concerned, and thereby validated, and this action may therefore be maintained as if the original agreement had been in writing. 3 Parsons on Cont. 37–38; *Sheehy v. Adarene*, 41 Vt. 541; *Coyle v. Davis*, 20 Wis. 564; *McClellan v. Sanford*, 26 id. 609. Contracts of partnership may be formed by parol for a long or indefinite period of time. Story on Part. sec. 86. And a parol contract of partnership to deal in lands is not within the statute. *Chester v. Dickerson*, 54 N.

Y. 1; *Williams v. Gillies*, 75 id. 197; *Hirbour v. Reeding*, 3 Montana, 15. This action is for the violation of an agreement *to enter into a contract* of partnership, and that agreement was to be executed within a year. *Hill v. Palmer*, 56 Wis. 123; Browne on Stat. of Frauds (4th ed.), sec. 291*a;* *M'Kay v. Rutherford*, 13 Jur. 21; *Hoare v. Hindley*, 49 Cal. 274.

For the respondent the cause was submitted on the brief of *John W. Cary.* He contended, *inter alia*, that the contract set out in the complaint is void under secs. 2302, 2304, R. S. The complaint expressly states that the plaintiffs by the transaction acquired an interest in the land, that is, that the defendant took the title in trust for the benefit of himself and the plaintiffs. *Daniels v. Bailey*, 43 Wis. 566; *Tillie v. Dunbar*, 62 id. 198; *Young v. Lego*, 36 id. 394; *Warner v. Trow*, id. 195; *Clark v. Davidson*, 53 id. 317. The contract was void under sec. 2307, R. S. If the quarry was inexhaustible, as alleged, and was to be worked under this contract so long as it might last, the contract certainly could not be performed within a year. The whole scope of it shows that the intention of the parties was that it should continue for a great number of years. 3 Parsons on Cont. 35, note *g;* *Cohen v. Stein*, 61 Wis. 508.

ORTON, J. The complaint states substantially the following facts: The plaintiffs, by their superior scientific knowledge, diligence, observation, and skill, had discovered a very valuable stone quarry on certain lands of William and Lyman Saunders, in Waukesha county, Wisconsin, of which said owners were ignorant; and, wishing to engage some person of abundant means with them in the scheme of making said quarry available to themselves, as well as to such person, by large profits on the investment, they communicated their information of said quarry to the defendant, he being such a person of large means and well suited to such

an enterprise; and they entered into a verbal contract with him that they should negotiate the purchase of said land for not exceeding $12,000, to be paid by the defendant, and procure a deed of said land to him, and that thereafter they, together with the defendant, should forthwith proceed to open and work the said stone quarry, by quarrying, removing, and selling the said stone, for profit, the defendant to advance the necessary money to carry on said business, and the plaintiffs to give and bestow their exclusive time, labor, and services for that purpose, and that the net profits of so opening, working, and developing said stone quarry, and so selling the said stone, should be equally divided between them, that is, one half to go the plaintiffs and one half to the defendant. The plaintiffs, in pursuance of said verbal contract, on the 28th day of September, 1885, by the employment of much of their time, labor, and money, negotiated said purchase for said sum of $12,000, and procured a deed of said lands to be executed and delivered to the defendant, and on the 1st day of October thereafter, they, together with the defendant, employed a foreman for said works, and the plaintiffs purchased tools therefor with the moneys advanced by the defendant for that purpose, and they were shipped to said quarry, and preparations were made to commence said works, and the plaintiffs were ready to perform said contract and commence and prosecute said business on the terms aforesaid with the defendant. The defendant, however, very soon thereafter refused to allow the plaintiffs to bestow any labor, services, or attention to the opening, developing, or working said stone quarry, or to divide any profits therefrom, and utterly refused to commence said works with the plaintiffs in pursuance of said contract, although they were willing and ready to do as they had so agreed to do on their part, and the defendant notified said plaintiffs that they could have no further interest in said works or business or the profits

thereof. The defendant thereupon took exclusive possession of said quarry, and commenced opening, working, and developing the same, and selling stone therefrom, to the exclusion of the plaintiffs from said works and the profits thereof. There are proper allegations of a valuable consideration to said contract, and of a breach thereof by the defendant. The stone quarry was supposed to be very extensive and valuable, and stone of the quality found therein was worth in market four dollars per cord, deducting all costs and expenses, which would have yielded to the plaintiffs a very large sum as their share of the net profits of said works had the defendant allowed them to perform said contract, and performed the same on his part. The prayer is for damages for the breach of said contract by the defendant by his refusal to allow the plaintiffs to enter upon and carry out said joint enterprise with him, commensurate with their share of said profits.

A general demurrer to said complaint was sustained by the circuit court, and from the order sustaining the same this appeal is taken.

The above is believed to be a substantially correct statement of the facts alleged in the complaint, although much briefer than the complaint itself.

Before entering upon the consideration of the important questions raised and argued in this court upon the demurrer, as to the validity of the contract in view of the statute of frauds, it may be proper to determine the nature of this action, and to classify, if we may, the contract set out in the complaint. On that subject we have the benefit of a recent decision of this court in *Hill v. Palmer*, 56 Wis. 123, in which the facts were very closely like those in this case, so far as that matter is concerned. In that case a similar contract was made between three persons for cutting, hauling, banking, and running logs to be taken from land belonging to another person. It was agreed that one of them should

Treat and another vs. Hiles.

procure the right to so cut logs upon said land for the benefit of all three, and that thereupon they should commence said works, which should be for their joint benefit and equal profits. The right to cut on said land was procured by such one of them according to the contract, and the other two were ready, with tools, teams, supplies, and camping outfit, to commence upon said works, whereupon they were notified by such other person that he would not go on any further with the contract, or with them in said works, and he entered upon said works alone and on his own account, to the exclusion of the other two, and availed himself of the benefit of the right to cut logs on said land procured by him for the benefit of all of them jointly, and went on and made large profits, for which the other two brought suit as damages for breach of the contract, as in this case. The striking similarity of the cases appears also in the fact that the plaintiffs had, by their prospecting and exploration, discovered and estimated the pine timber on said land, and by their own skill, labor, and superior knowledge, and communicated their discovery to the defendant as an inducement for him to enter into the contract with them. This court determined in that case that the contract was one to enter into an agreement for a copartnership, or to enter upon the business of a copartnership already formed, which had not been commenced, and that therefore an action at law would lie for the breach of the contract. This decision was sustained by the citation of numerous authorities. (1) Then the contract here set out is either one for a copartnership, or of copartnership not yet practically commenced; and (2) this action at law for damages is properly brought. A bill in equity to close up a partnership, or to dissolve it, or for an accounting, would be fruitless, because it had not entered upon business and had made no profits or accumulated any property. It is proper to say that no objection to the form of the action was taken in this

case by the learned counsel of the respondent, but he declined to notice the argument of opposite counsel relative to the questions of partnership, as he claimed they had no relation to the issue.

The important questions in this case, and which were very ably discussed by the learned and distinguished counsel on both sides, are whether this contract is for any interest in lands, in violation of the statute of frauds in sec. 2302, R. S., or by its terms is not to be performed within one year, in violation of sec. 2307, R. S. These questions will be disposed of in their order.

The first question, as to whether this contract is for any interest in the land so purchased by the defendant, upon which the stone quarry is situated, is not very clear or readily answered without a very full examination of the authorities and a critical understanding of the terms, purposes, and relation of the contract to the said lands. I confess that it appeared to me at first blush that the contract does create an interest in said land, or convey some interest therein to all of the parties, or to the plaintiffs, or to the copartnership; but, upon further and much thought and a full investigation of the subject in the light of the authorities, it appears perfectly clear that it does not, and that the contract is not within the statute. Neither the contract nor the partnership concerns anything except the mere *working of a stone quarry* on the land of one of the partners, and the selling of the stone and the profits of the business. It does not convey the stone in the quarry, or any part of it. The quarry remains the property of the defendant, or the owner of the land, all of the time, and the stone severed from the freehold by the joint labor of the parties only becomes the property of the partnership, to be sold for a profit to be equally divided. The contract contains a license to the plaintiffs to go upon the land of the defendant and work the quarry, either as a mere verbal license

which, while it exists, will justify the entry for such purpose, or a right to so work by the authority and in the right of the defendant as one of the copartners. In either case there is no interest in the land itself involved. It may be that such license could be revoked by the defendant at any time, but such revocation would involve a breach of the partnership contract, for which damages could be recovered as in this case.

The same principles exist in all mining contracts when the mere working of a mine is the subject of the contract, and no interest in the mine itself is at all affected. This interest, as we shall see, is represented by the shares of stock of a company that has the mere right to work a mine. Such shares represent no interest in the mine itself or the land; but the mere interest in the net profits. The shareholder is entitled to his dividend, which consists of his share of the net profits of the enterprise.

With these preliminary observations, we will notice some of the authorities sustaining these views. In *Gillett v. Treganza*, 6 Wis. 343, the contract conveyed the right *to dig on a certain range for lead ore*, or, as the present chief justice said in his opinion, " *to work or search for* " lead ore on the land of one of the parties. The language in this contract is " to *open, develop, and work* the said *stone quarry*," and again, " by *quarrying, removing,* and *selling* the said stone." There is absolutely no difference. It is said in the opinion: " Instead, therefore, of parting with, granting, and conveying all the mines and lead ore that were then existing within the land, the words of the agreement import nothing more than a right or license or privilege to search and get these minerals." And again: " But the plain object and intent of this agreement appears to be, not to create a property or estate in the land, not to sell the mines or mineral unsevered therein, but to sell a right, liberty, license, and privilege to *work, mine,* and *search for*

lead ore upon the range therein described." It is intimated in the opinion that such a license was probably irrevocable if the mining was prosecuted with diligence. This case would seem to be sufficient authority. But, lest its perfect applicability may be questioned, we will look further into the authorities.

The mere right to work a quarry or a mine is not exclusive of the grantor, and conveys no interest in the quarry or mine or the land. Coll. Mines, §§ 1, 5, 9; Co. Litt. 42*a*; 2 Bl. Comm. 121; *Brewer v. Hill*, 2 Anstr. 413; *Hewlins v. Shippam*, 5 Barn. & C. 229. A verbal agreement to share profit and loss in the working of a colliery is not within the statute. *Forster v. Hale*, 5 Ves. Jr. 314; *Watson v. Spratley*, 10 Exch. 222. Those having a right to search for and dig ore on another's land divided their interest into shares. It was held that such shares may be conveyed by parol. *Hanley v. Wood*, 2 Barn. & Ald. 724. The liberty to dig tin and other metals on another's land is a mere license, and conveys no interest in the land. *Hayter v. Tucker*, 4 Kay & J. 249. Shareholders are only interested in the profits of *working* the mine, and have no interest in the *realty*. *Powell v. Jessopp*, 18 C. B. 336; *Walker v. Bartlett*, 18 C. B. 845. In *Hills v. Parker*, 7 Jur. (N. S.), 833, a person holding a leasehold interest in salt-works formed a partnership with others to work the wells and make salt. It was held that the partnership had no interest in the estate. In *Burdon v. Barkus*, 3 Giff. 412, the lessee of a coal mine took in a partner to work it for iron-stone and fire-clay. It was held that he could terminate the partnership at his pleasure, because he was alone interested in the lease. In *Dale v. Hamilton*, 2 Phil. 266, C. purchased the land for A. and B., and they entered into partnership with C., and it was agreed that C. should survey and plat the land into lots, and do other work, and try and sell the lots, and, when sold, the profits should be divided between them. It was

held that no interest in the land passed to C. by the contract. A mere parol license to dig a well on another's land, and carry the water in pipes to his own land, conveys no interest in the land. *Houston v. Laffee*, 46 N. H. 507. If one agrees with the owner of the land to get a railroad located and constructed on it, and to lay it off into lots and make sales, in consideration of half of the profits above cost, he obtains no interest in the land. *Lesley v. Rosson*, 39 Miss. 368. "A colliery and a landed estate are considered quite different by the courts; a colliery being always considered as a *trade*, the profits of which accruing from day to day belonging to those who work it for the profits thereof." *Steward v. Blakeway*, L. R. 4 Ch. App. 603. "Real estate not purchased by partnership funds, although used for partnership purposes, does not become partnership property, and the title is not affected by such use." *Alexander v. Kimbro*, 49 Miss. 529; *Frink v. Branch*, 16 Conn. 261. "The authority to do an act or series of acts upon the land of another, such as to hunt, remove stone, or cut down trees, is a mere license, and conveys no interest in the land." Browne, Stat. of Frauds, § 26, and cases cited in note. "A parol license to dig minerals on the land of the licensor is valid." 3 Pars. Cont. 39. A third person built a house on the mortgaged premises for the mortgagor on the parol agreement of the mortgagee that he should be paid for it, or have a lien upon it in preference to the mortgage. The agreement was held valid. *Godeffroy v. Caldwell*, 2 Cal. 489. The sale of a mining claim does not affect the title of the land. *Hitchens v. Nougues*, 11 Cal. 29. The owner of the land verbally contracted with two others that they should dig and prospect for coal, and do all the other work to open the mine, and then that they would raise and sell the coal jointly, the profits to be divided equally. It was held a partnership in mining like any other partnerships, only it was not founded on the *delectus personæ*, and

that it carried no interest in the land.  *Ibid.; Duryea v. Burt*, 28 Cal. 569.

A verbal agreement between two or more to explore and locate and work lodes on government land is not within the statute.  *Murley v. Ennis*, 2 Colo. 300.  A verbal agreement that plaster lands and a plaster-mill should be bought and owned by A. and B., and worked by them as partners, is within the statute; but not so if the land was to be owned by one of them only.  *Brosnan v. McKee*, 59 Mich. 107. To this case there is a note of cases of *Snyder v. Wolford*, 33 Minn. 175; *Carr v. Leavitt*, 54 Mich. 540; *Miller v. Kendig*, 55 Iowa, 174.  These cases hold that when one person selects lands and contracts with another to purchase and hold them in his own name, and when they are sold the net profits to be divided between them in consideration of his services, the contract is not within the statute.  The plaintiff was the owner of a limekiln, and it was verbally agreed that the defendant should fill it with limestone and furnish the wood to burn it, and the lime to be equally divided between them.  It was held to be a partnership, and the defendant was liable for taking more than his share.  *Musier v. Trumpbour*, 5 Wend. 274.  A verbal agreement of copartnership was entered into by several persons for the purposes of developing plaster-beds on certain lands, and for getting out and selling plaster, and for procuring the title to the lands.  The business went on until the lands were finally bought and paid for by the profits of the concern.  It was held not to be within the statute.  *Godfrey v. White*, 43 Mich. 171.  A sale of shares of a mining company working a mine does not convey any interest in the land, but only in the severed mineral ores, machinery, and personal effects. Rog. Mines, 428.  A partnership for the purpose of mining for lead ore, irrespective of title to the lands, may be formed by parol agreement, and will be treated, in respect to the ore raised, like any other partnership.  *Sauntry v. Dunlap*, 12 Wis. 404.

These cases clearly illustrate the principles underlying this contract or partnership in this case. There can no case be found, in my opinion, of similar facts, where it has ever been held that such a contract was within the statute. But there are many respectable authorities which hold that such a contract, even if it went further and provided that the lands themselves should belong to the partnership or be held in trust for the partnership for the purpose of mining or quarrying or milling, etc., was not within the statute. But such is clearly not this case; for there is no provision made for the purchase of the land or any interest in it from the defendant, although there is an averment in the complaint that the defendant held it in trust for the purpose of such quarrying business. This can only mean that the land was to be used by the partnership only for such purpose. It appears very clear, both from reason and authority, that this contract is not within the statute above referred to, and is therefore valid if it could be performed within one year, and not within the other section of the statute.

Was this a contract which by its terms was not to be performed within one year? If it was a contract to form a partnership for the above purposes merely, then it is very clear that it was to be performed at once and without any delay. *Hill v. Palmer*, 56 Wis. 123. An agreement to form a partnership to get out stone and construct certain public works was so far performed that the firm entered upon the business. The contract was held not to be within the one-year statute. *M'Kay v. Rutherford*, 13 Jur. 21; *Hoare v. Hindley*, 49 Cal. 274. But, in any view of the case that can be taken on the facts, a contract to form a partnership, or a contract of partnership entered upon nominally and then violated before anything has been done under it, is not within this statute. The identical point would seem to have been decided by this court in *Ganter v. Atkinson*, 35 Wis. 48. That was a verbal partnership agreement to work

a certain mine. They were to begin at a certain point on the land described, and " to have the *exclusive* right to work and take out *all* ore found in the drift or in the crevices or openings between the line of the drift and the east boundary line of the land." It was not known, and could not be known, how long it would take " to take out all of the ore " in that district, but it might have been supposed that it would take a very long time and the ore to be nearly exhaustless, and was evidently supposed to be a very large and valuable enterprise. But it was sufficient that it was not known, and that the contract might be fully performed within the year. The question in that case was not under this statute, but under the exception to the first above section as of a lease "*for* a term not exceeding one year," and this court held that the contract was such a lease, and that it did not appear that the term would exceed one year. The question in this case of very similar facts, is the same in principle. That contract was held to be a *lease* rather than a *license*, because it was *exclusive* of the owner of the land, and valid because the term might end within one year.

A sale of property, with an agreement that the title should remain in the vendor *until it was paid for*, was held not to be within the statute, in *Esty v. Aldrich*, 46 N. H. 127. Although the money was payable at once, yet the time within which it might be paid was indefinite. A. gave B. an equitable interest in a patent-right, and B. was to make the machine practicable, and introduce it into the markets, and then they were to be tenants in common of the right. This contract was verbal, and held not to be within the statute. *Blakeney v. Goode*, 30 Ohio St. 350. " It did not appear that the contract could not be performed within one year." *Greene v. Harris*, 9 R. I. 401. A contract was to take effect at a certain date and continue as long as both parties were satisfied. Held not to be within the one-year statute. *Sherman v. Champlain*

*Transp. Co.* 31 Vt. 162. This is precisely the case with all partnerships of unlimited time. If the time of performance depends upon a contingency which might happen within the year, the contract is not within the statute, such as a promise to forbear suit as long as a certain person should live. *Wells v. Horton*, 4 Bing. 40. The cases in this court hold that the contract must be such that *it cannot* be performed within one year, to be void under this statute. *Rogers v. Brightman*, 10 Wis. 65; *Heath v. Heath*, 31 Wis. 223; *Murray v. Abbot*, 61 Wis. 198. Besides this, many of the cases in this court hold that if the contract has been performed within the year by one of the parties, it is taken out of the statute. *McClellan v. Sanford*, 26 Wis. 595; *Coyle v. Davis*, 20 Wis. 564; *Jilson v. Gilbert*, 26 Wis. 637.

It is true that the complaint probably exaggerates the vastness and unlimited extent of this quarry, and on information and belief it is stated that it is *exhaustless*. But this was a mere strong expression of an expectation of great and lasting profits, to swell the damages in the case. But, in the nature of things, the parties could *not* have known, when the contract was made, that this quarry, so far as any valuable stone in it was concerned, would not be exhausted within one year. It had not been opened yet to ascertain to what extent and for how long a time it might be profitable to work this quarry. It was a partnership that might be dissolved by many contingencies, and the time of its continuance was unlimited.

But I have pursued this subject far enough and much further than necessary, and have made this opinion probably quite too long already. But the questions are very important, and there ought not to be any mistake made about the law in such a case. I have given these questions more attention, and examined the authorities more fully, than might appear to have been necessary, because the learned and distinguished counsel for the respondent, with his usual

candor, expressed the utmost confidence in his positions on the argument. It would not be safe or seemly to differ with some lawyers who have examined a question in their own cases, and express positive confidence in their own opinions upon it, too hastily, or without much thought and research. But we are clearly satisfied that the contract set out in the complaint is in all respects a valid one and not within any of the provisions of the statute of frauds, and that the complaint states a good cause of action against the defendant.

The circuit court erred in sustaining the demurrer.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.

See notes to this case in 32 N. W. Rep. 517, 523.— REP.