[S. F. No. 7268. Department One.—April 19, 1917.]

## ISAAC SWEET, Plaintiff and Appellant, v. FRESNO HOTEL COMPANY, Defendant and Appellant.

## BRANDT BROS., Plaintiffs and Respondents, v. FRESNO HOTEL COMPANY, Defendant and Appellant.

Mechanics' Liens—Void Building Contract—Silence as to Time of Final Payment.—Prior to the amendments of the mechanic's lien law in 1911, a building contract which merely provides when seventy-five per cent of the contract price is payable, and which makes no provision as to the payment of the remaining twenty-five per cent thirty-five days after the completion of the building, is void under section 1184 of the Code of Civil Procedure, as then existing, and persons furnishing labor and material are entitled to liens for the full amount thereof.

Id.—Claim of Lien—Sufficiency of Form.—A claim of lien which conforms to the requirements of section 1187 of the Code of Civil Procedure, and which contains nothing that is contradictory or destructive of the essential particulars enumerated in such section, is sufficient.

Id.—Claim and Evidence—Lack of Variance.—There is no variance between a claim of lien of subcontractors for labor and material up to time of cessation of labor, estimated at contract price, stated to be the value thereof, and evidence that the same was the value of the labor and material plus twenty per cent profits as subcontractors.

Id.—Name of Person Employing Claimant—Statement in Lien.—The statement in a claim of lien by subcontractors that the contract made with them by the contractor was made by the latter "on behalf of and for said owner" does not vitiate the claim, as not giving the name of the person by whom they were employed.

Id.—Loan of Money to Contractor—Payment of Employees—Right of Lien.—A person, who under an agreement with a building contractor pays the wages of the employees and is to be repaid

the amount expended with a commission, is not entitled to a lien for the money loaned.

ID.—AGREEMENT BETWEEN CONTRACTOR AND SUPERINTENDENT—FURNISHING OF LABOR AND PAYMENT OF WAGES—REPAYMENT WITH COMMISSION—RIGHT OF LIEN.—A contract between a building contractor and the superintendent of the building by the terms of which the latter was to furnish all common and carpenter labor for the completion of the building, and to pay all wages, and the contractor to repay each month with commission the amount of wages paid to employees for the preceding month, is a contract to bestow labor on the building, entitling the superintendent to a lien, and not a contract for money loaned, although it is provided that the contractor shall make out and deliver weekly pay-rolls to the superintendent and that the contractor shall have the right to discharge unsatisfactory employees.

ID.—INTEREST ON CLAIM.—A contractor cannot increase the burden of the owner by an agreement with a lien claimant, made after the work done, to pay interest at an increased rate, but in such case there is the right to interest at the legal rate.

APPEALS from judgments of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, F. E. Cook, Short & Sutherland, and Carl E. Lindsay, for Defendant and Appellant.

Johnson & Jones, and C. W. Miller, for Respondent.

Milton M. Dearing, for Plaintiff and Appellant.

SHAW, J.—The cases here presented are actions to foreclose mechanics' liens.

All the parties appealed. The appeal of the plaintiffs, Brandt Bros., was presented in case No. 6915 and has been decided, the judgment having been held good against their attacks. (*Brandt Bros.* v. *Fresno Hotel Co.,* 173 Cal. 209, [159 Pac. 434].) The appeals of the other parties are presented by the record in this case (No. 7268), and will now be considered. The contract was made and filed and the work was begun prior to the enactment of the amendments of 1911 to the mechanic's lien law. The rights of the respective parties are therefore dependent on the law existing before those

amendments took effect, and our references to code sections
are to be understood as referring to them in their pre-existing
form.

The Fresno Hotel Company contracted with H. C. Farley
& Co., a corporation, for the erection of a building by said
Farley & Co., on certain lots in the city of Fresno belonging
to the Hotel Company. The Hotel Company therein agreed,
in consideration of the erection of said building, "to pay, or
cause to be paid, to the contractor," the sum of one hundred
and ninety-nine thousand five hundred dollars "at times and
in the manner following, to wit: Seventy-five per cent of the
completed work done during the preceding month to be paid
on the first of every succeeding month." It was also pro-
vided that at the final completion of the work the architect
should certify to that fact in writing to the contractor, stating
therein the amount then due. There were no provisions or
agreements for the payment of the remaining twenty-five per
cent of the contract price, other than those above set forth,
nor any statement that the same should be "payable at least
thirty-five days after the final completion of the contract,"
as required by section 1184 of the Code of Civil Procedure.
This contract was duly filed in the office of the county recorder
on December 17, 1910, before the work thereunder was begun.
The contractor proceeded with the erection of the proposed
building until November 15, 1911, at which time it ceased
work thereon and it has never resumed the same. On December
21, 1911, the Hotel Company, pursuant to the first clause of
section 1187 of the Code of Civil Procedure, filed in the re-
corder's office a notice of cessation of labor on the building.

On January 12, 1912, the plaintiff, Sweet, filed in the re-
corder's office his claim of lien against the property for certain
labor performed and materials furnished for and used in the
building, under agreements with the original contractor. On
January 15, 1912, plaintiffs, Brandt Bros., filed their claim
of lien against the property for certain work performed and
materials furnished by them therefor and used therein, under
agreements with the contractor. The present actions are for
the foreclosure of these liens.

The court found that the balance owing to Sweet for the
materials furnished and labor performed by him in the
erection of the building was $3,231.06, and that the balance
owing to Brandt Bros. for the labor performed and materials

furnished by them in the erection of said building was $5,585.65. Judgment of foreclosure was duly rendered in favor of the respective plaintiffs for these sums.

We will first consider the appeals of the Hotel Company.

The judgment of the court below was given upon the theory that the contract was invalid as to third persons because of its failure to provide that one-fourth of the contract price should not be payable until thirty-five days after completion, and that consequently the plaintiffs were entitled to a lien for the full amount unpaid of the value of their labor and materials furnished, although the balance unpaid from the owner to the contractor was not sufficient to pay such claims in full. Section 1184 expressly declares that if a building contract does not "conform substantially" to its provisions, "the labor done and materials furnished by all persons except the contractor shall be deemed to have been done and furnished at the personal instance and request of the person who contracted with the contractor, and they shall have a lien for the value thereof." Our decisions uniformly hold that where such substantial conformity is wanting the contract price does not limit the amount of the liability as to liens. (*San Diego L. Co.* v. *Woolredge,* 90 Cal. 574, 578, [27 Pac. 431]; *Willamette etc. Co.* v. *Los Angeles etc. Co.,* 94 Cal. 229, 234, [29 Pac. 629]; *Merced L. Co.* v. *Bruschi,* 152 Cal. 374, [92 Pac. 844]; *Burnett* v. *Glas,* 154 Cal. 249, 256, [97 Pac. 423]; *D. I. Nofziger L. Co.* v. *Solomon,* 13 Cal. App. 621, 625, [110 Pac. 474].) The Hotel Company claims that this defect in the contract is not a lack of substantial conformity with section 1184. The argument is that inasmuch as the contract does not declare that the final one-fourth shall be paid prior to the expiration of the thirty-five days after completion, but is silent as to the time of such payment, it does not expressly violate the section, and that the law itself becomes a part of the contract, with the result that, by force of the statute, that installment would not be payable until thirty-five days after completion. We do not so understand the provision in question. The part of the section to which all contracts must substantially conform reads as follows:

"No part of the contract price shall, by the terms of any such contract, be made payable, nor shall the same or any part thereof be paid in advance of the commencement of the work, but the contract price shall, by the terms of the con-

tract, be made payable in installments at specified times after the commencement of the work, or on the completion of specified portions of the work, or on the completion of the whole work; provided, that at least twenty-five per cent of the whole contract price shall be made payable at least thirty-five days after the final completion of the contract."

This language is mandatory. It does not, as the argument assumes, declare the legal effect of such contract; it relates to the terms of the contracts and prescribes what such terms shall be; its declaration is, in effect, that such contracts must, by their terms, declare that at least twenty-five per cent of the contract price *shall be "payable* at least thirty-five days" after final completion. There is a reason for this requirement. The contract must be filed in the recorder's office so that all laborers and other persons interested may see it and learn therefrom at first hand the time of payment. The purpose was to have it expressed on the face of the contract and not left to implication founded on principles of construction not universally understood. This purpose would be defeated if a failure to speak were held innocent on the theory proposed by the defendant. This contract contains an express agreement to pay the whole price, $199,500. By the general principles of law whatever of this sum remained unpaid on final completion would be immediately payable. A contract which so completely disregards the express provisions of the section, which is silent where it is commanded to speak, and which defeats one of the important objects sought to be attained by section 1184, cannot be said to conform substantially thereto.

We can see no substantial objection to the form of the respective claims of lien. They each state clearly the demand of the claimant, less just credits and offsets, the name of the owner of the property and of the contractor by whom the claimant was employed and to whom he furnished the material, the terms, the time given and conditions of the contract to do the work and furnish the materials and a description of the property charged with the lien. Section 1187, which prescribes the form of such claim, requires nothing more than the particulars above enumerated and a claim which conforms to these requirements must be held sufficient. They contain nothing that is contradictory or destructive of the essential particulars above enumerated.

There was no variance between the claim of lien of Brandt Bros. and the proof in support of their claim. Their claim, though inaptly expressed, in effect was for the value of the work done and material furnished by them up to the time of the cessation of labor, estimated at the contract price which, the claim also states, was the value thereof. There was evidence that this amount was the actual value of the work and materials, plus twenty per cent for their profit as subcontractors. The court below allowed nothing for the profit, but did allow for the value less the profit. This was sufficient to support the claim and the judgment. The statement in the claim of Brandt Bros. that the contract made by them with Farley & Co. was made by the latter "on behalf of and for said owner," does not vitiate the claim. The name of the contractor is plainly given and the phrase quoted was manifestly inserted to give point to the theory that the contract was void because of the failure to make twenty-five per cent payable thirty-five days after completion. In such case the statute declares, as before stated, that the work and materials shall be deemed to have been done and furnished at the instance of the owner. It cannot be said that because of this phrase the name of the person by whom the claimants were employed is not given.

The claim of Isaac Sweet states that the work bestowed by him on the building was done under three written contracts between him and H. C. Farley & Co., the contractor. The technical objection is made that these contracts, which were made a part of the claim of lien as filed, purport to be contracts of "Isaac Sweet & Co." or "I. Sweet & Co.," while they are signed only by Isaac Sweet and H. C. Farley & Co. and that they do not support a claim of lien by Isaac Sweet alone. The claim of lien directly asserts that the contracts mentioned were each made by Isaac Sweet. They are signed by Isaac Sweet, not by Isaac Sweet & Co. This is fully explained by the evidence that "Isaac Sweet & Co." was merely a name under which Isaac Sweet was doing business and that no one else was interested in that business. They were therefore the contracts of Isaac Sweet alone and were correctly described as such in the claim of lien. It was unnecessary to make the explanation a part of the statement of the claim. The assertion of the ultimate fact that Isaac Sweet made the contracts was sufficient.

One of these contracts was made on April 1, 1911, upon which the court below allowed a lien for $628.30. After reciting the previous contract of February 1st, which Sweet had partly performed and by which he had earned $358.58 more than had been paid to him and declaring that the same was canceled, saving the debt for $358.58 and a lien to Sweet on the building therefor, this contract proceeds as follows:

"In consideration of the above release and cancellation, and of the further payments and considerations hereinafter mentioned, Isaac Sweet hereby assumes and agrees to pay all of the wages due to carpenters and common laborers employed in the erection of the Fresno Hotel, until the same is completed; which said amount shall be returned to Isaac Sweet in the manner as follows:

"Seventy-five per cent of the amount of the pay-rolls each month, together with ten per cent commission on each weekly pay-roll, payable on the following month between the 1st and 5th of the month and the balance twenty-five per cent, thirty-five days after the acceptance and completion of the building, weekly pay-rolls to be made out by Farley & Company and signed by them and delivered to said Isaac Sweet each week, Farley & Company to have the right to hire and discharge any and all men but their names shall be placed on the pay-rolls when employed. Sweet to act in the capacity of superintendent and to see that the work progresses."

This, on its face, is not a contract by Sweet to perform labor on the building or to have labor performed thereon by others in his employment. It is, on his part, an agreement to assume and pay all wages due to certain classes of laborers employed on the building, and on the part of Farley & Co. an agreement to return to him the money advanced for that purpose. The laborers to be paid thereunder were to be hired and discharged by Farley & Co., who was to make out weekly pay-rolls for Sweet's information as to the amount to be paid to the men. So far as the work is concerned, Sweet's only function was to act as superintendent and to pay the wages due from the contractor to the men. He was not the employer. In effect he was loaning money to the contractor and performing service as superintendent of the work, for which service he was to receive an amount equal to ten per cent of the wages earned by the men. The law does not allow a lien for money loaned to a building contractor to enable him to

carry out his contract. (*Godeffroy* v. *Caldwell*, 2 Cal. 489, [56 Am. Dec. 360].) The lien claim states, with respect to this contract, that it is for "carpenter labor and common labor" performed under it. This must be understood to refer to the labor performed by the men employed by Farley & Co. and whose wages Sweet paid. It does not cover compensation for his own services as superintendent. It follows, therefore, that the claim did not embrace anything for which he was entitled to a lien and none should have been allowed thereunder.

The defendant claims that the same rule should apply to the contract made on June 1, 1911. By the contract of June 1st, Sweet expressly "agrees to furnish all common labor and carpenter labor necessary to the construction and completion of said building and to pay all wages that may become due to the carpenters and common laborers, . . . paying such laborers weekly or at such other times as their wages may become due." Farley & Co. agreed "for such labor furnished in the erection of said building" to pay to Sweet, between the first and fifth day of each month, the amount of the wages Sweet had paid to such laborers during the preceding month. The contract further declares that Farley & Co. shall make out weekly pay-rolls and deliver the same to Sweet at the end of each week, and that it was "understood that all men employed upon, in, and about said building shall be satisfactory to said" Farley & Co., "and that they shall have the right at any and all times to discharge anyone not satisfactory to them and to replace the same by persons selected by themselves." We cannot agree to the proposition that this contract was a mere reiteration or renewal of the previous contract of April 1, 1911. Its language was different from the previous contract in a very important particular, and was presumably made so with the purpose of changing its effect.

It may be true, as contended by the defendant, that the actual mode of carrying on the work and paying the men after June 1st did not differ materially in appearance from that practiced before June 1st. But this similarity was not fatal to the validity, or destructive of the effect, of the new contract. The old contract was, in effect, an agreement by Sweet to advance money to pay the debts owing by Farley & Co.; the new one was an agreement by him to bestow labor

upon the building, hiring the men himself and paying their wages. It was a lawful contract, for a lawful purpose. He had the lawful right to make it, notwithstanding the fact that the effect was to give him a right to a lien under the mechanic's lien law which he did not have under the contract of April 1st. The evidence showed that he actually did select and hire the men and superintend them in the work under the contract of June 1st. The provision that Farley & Co. should have the right to discharge men that were not satisfactory to it and to replace them by other persons selected by itself did not make it the employer of the new men thus selected; it merely empowered it to make the selection of the men to be employed by Sweet. We think the plaintiff, Sweet, was entitled to a lien for the value of the labor furnished under this contract.

The main point urged in support of the appeal of Sweet is that the court erred in refusing to allow him a lien for the ten per cent upon the pay-rolls which he was to receive by virtue of his contracts with Farley & Co. of April 1st and June 1st, respectively. As we have concluded that Sweet was entitled to nothing under the contract of April 1st, the objection is immaterial with respect to that contract. We are of the opinion that the point is well taken with regard to the labor bestowed under the contract of June 1st. It appears from what we have already said that Sweet's relation to Farley & Co. under that contract was that of a subcontractor to furnish labor of certain kinds for the erection of the building. The contract contemplated some services by him. He was obliged to hire the men, see that they worked on the building when wanted and attend to the paying of their wages. For the labor furnished in this manner he was to receive a sum equal to the amount of the monthly pay-roll plus ten per cent. He was entitled under the law to the value of the labor furnished. Under a contract of that kind the true value of the labor furnished would be the amount of the reasonable wages paid to the men, with an additional sum for the value of the services of the subcontractor which, as above stated, it required him to perform. For this aggregate value he was entitled to a lien. His right thereto is as clear as would be that of a subcontractor for construction to claim a lien for more than the actual market value of the materials purchased by him and used in the building. There was evidence to the

effect that ten per cent of the pay-roll was a reasonable charge
for the contractor under such contract.   The defendant does
not point out any evidence to the contrary.   It also appeared
that the wages paid were the usual wages current in that
vicinity.   The court should have found the reasonable value
by adding ten per cent to the amount of the pay-roll as the
contract provided.   It concluded, as matter of law, that Sweet
was entitled to nothing more than his actual outlay for wages
and in pursuance of that theory it found that the reasonable
value of the work done under that contract was $2,244.10,
being the amount of the wages paid to the men.   The amount
should have been $224.41 more.

In October, 1911, after the labor claimed for by Sweet had
all been furnished, he made a settlement with Farley & Co.
whereby the latter agreed to pay him ten per cent interest
on the balance due him.   The court properly refused to allow
interest at this rate.   The lien is statutory and it extends
only to the value of the labor and materials bestowed upon
the building.   A contractor has no authority to increase the
burden of the owner by an agreement with a lien-claimant,
made after the work is done, to pay interest at an increased
rate.   The court, however, erred in refusing to allow any in-
terest.   The amount owing to Sweet, as well as its time of
payment, was fixed and certain.   Interest at seven per cent
should have been allowed thereon from the time it became
due up to the time of judgment.   (*Burnett* v. *Glas,* 154 Cal.
249, 260, [97 Pac. 423] ; *Pacific Mut. Life Ins. Co.* v. *Fisher,*
106 Cal. 224, 233, [39 Pac. 758].)

The result of our conclusions is that the judgment is correct
so far as the lien of Brandt Bros. is concerned, that the lien
of Sweet was unwarrantably increased by including therein
the sum of $628.30 under the contract of April 1, 1911; that
the amount allowed under the contract of June 1, 1911, should
be increased by adding the sum of $224.41, making a total
of $2,468.51; and that the court should have allowed interest
thereon at seven per cent from August 5, 1911, and interest
on the sum of $358.58 admitted to be due under the contract
of February 1, 1911, from August 1, 1911.   This day, it may
be explained, was fixed by the parties in a subsequent agree-
ment as the date on which interest should begin on the Feb-
ruary contract, otherwise it would have begun at an earlier
date.   The facts appear with sufficient certainty in the find-

ings to authorize a judgment to be entered in accordance with these conclusions. There is therefore. no necessity for remanding the case for another trial. The proper result can be reached by directing a modification of the judgment. Since both parties succeed in part on their appeals, the costs should be divided equally between them. Although the judgment in favor of Brandt Bros. is upheld, we think that as the cases were consolidated and the judgment for both parties was made in one entry, the entire judgment should be recast by the court below.

The judgment is reversed and the case is remanded with directions to the court below to enter a judgment of foreclosure in favor of Brandt Bros. for the amount found due them including interest up to the date of such judgment, and in favor of the plaintiff Sweet in accordance with this opinion. It is further ordered that the plaintiff Isaac Sweet and the defendant shall each pay one-half of the costs of these appeals.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.